FILOMENA SEPÚLVEDA, Appellant, v. REGISTRAR OF PROPERTY OF MAYAGÜEZ, Respondent.

No. 883. Submitted January 19, 1933.—Decided February 7, 1933.

*A. Arroyo Rivera* for appellant. The registrar appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

On October 15, 1937, Primitivo Martínez and his wife, Jovita Valle, of the one part, and Filomena Sepúlveda, widow

of Torres, of the other part, appeared before a notary public and executed a contract in which it was set forth that Eloy Roldón had prosecuted an action of debt against the Succession of Torres and a tract of land, with an area of 20 *cuerdas* and a dwelling house thereon, belonging to said succession was sold to satisfy the judgment recovered by him; that the property sold was acquired by Juan Mari, from whom it was bought by the Martínez-Valle spouses, parties to the deed herein; that when they tried to take possession of the property, the other contracting party, the widow of Torres, objected, alleging her right of homestead; that the contracting parties amicably settled their differences by segregating a parcel of 3 *cuerdas* and the house, valued at $500, which was allotted to the widow as a homestead. The sixth clause of the contract reads textually as follows:

"SIXTH: The widow Filomena Sepúlveda shall record this deed of segregation and allotment of homestead in the registry of property, and it is stipulated that said widow, for herself and on behalf of her minor children, considers herself as paid for all rights in the above-described property, the remainder of the property to belong wholly to Mr. Martínez; and Mr. Martínez shall be bound to continue paying the mortgage held by the Federal Land Bank, without any obligation on the part of the widow to make any payments to the mortgage creditor, Mr. Martínez assuming the said debt in its entirety."

When the instrument was presented in the registry on December 9, 1932, the registrar refused to record it, in a decision the pertinent part of which reads as follows:

"Record denied . . . because in the sixth clause of the document it is set forth that Mr. Martínez shall be bound to pay the mortgage held by the Federal Land Bank, without any obligation by the widow to pay anything to the creditor, the Federal Land Bank, Mr. Martínez assuming the said debt in its entirety, without the said creditor, the Federal Land Bank of Baltimore, having appeared to give its consent to such contract . . ."

Feeling aggrieved by that decision, Mrs. Sepúlveda appealed to this Court. She maintains that the registrar erred in refusing the record sought:

"1. Because the covenant contained in the sixth clause constitutes a purely personal obligation between the contracting parties which in no wise affects or can affect the rights of third persons; and there is no prohibition either in the Mortgage Law or in any other law, against including such pacts or obligations of a purely personal character.

"2. Because no novation of the original mortgage obligation constituted by the appellant in favor of her creditor, the Federal Land Bank, is either attempted or sought by the said covenant.

"3. Because, in any event, the appellant has not renounced in favor of her creditor, the Federal Land Bank of Baltimore, the right to claim against said creditor her homestead right or exemption. The renunciation is effective only in regard to the grantor, Primitivo Martínez."

The registrar attacks the above assignments, in a brief from which we transcribe the following excerpts:

"According to section 1228 of the Civil Code, there is no contract unless there exist the requisites of the consent of the contracting parties, a definite object which is the subject matter of the contract, and a consideration for the obligation established; and if we examine that which is the object of said deed No. 198, we find that the main purpose sought by the contracting parties ... was for the vendor, Mr. Martínez, to convey to the appellant widow. Filomena Sepúlveda, said ... segregated property ... in payment of a homestead claim ... it being stipulated ... that she (Mrs. Sepúlveda) considered herself paid for said homestead claim, the remainder of the principal property to belong 'exclusively to the vendor, Mr. Martínez, and he to be bound to continue to pay the above-mentioned mortgage to said Federal Land Bank of Baltimore, the widow being without any obligation whatever to pay anything to the mortgage creditor, Mr. Martínez assuming the whole of said debt.

"The said purpose constitutes the consideration of the contract and is its essential reason; but as said consideration stated in this case is apparent and illusory, since the appellant cannot acquire· the property conveyed to her, free from said mortgage in favor of the Federal Land Bank of Baltimore, without the latter's consent, no consideration exists, and the lack thereof produces the nullity of

the contractual obligation as it vitiates the consent; furthermore, in an attempt to perfect the contract and render it effective, there was incorporated as consideration the sixth clause, which is a conditional obligation of the vendor, Mr. Martínez, to pay the mortgage to the said bank, based on a future and uncertain act; and it is plain that as long as that condition is unfulfilled, the intent is not carried out, either, because if the consideration is a future one, and upon its realization depends the effectiveness of the contract, it is indisputable that such promise by itself lacks consideration. Therefore, application must be made of section 1242 of the Civil Code, which provides: 'Contracts without consideration or with an illicit one have no effect whatever'; hence the reason for the refusal to record said deed of sale No. 198, for want of the consent of the aforesaid mortgage creditor.

"Insisting on the want of consideration ... it is submitted that that obligation cannot be considered as a personal one which could be disregarded in the recording of the contract; on the contrary, it is evident that there is involved a real obligation, as it affects real rights, and it is the soul of the agreement because the intention ... of the appellant was the acquisition of the property as a homestead, free from encumbrances, ... for which purpose she gave her consent which turns out to be vitiated by the apparent and illusory character of the consideration, (because) ... until such payment is made, (the mortgage) continues to follow the whole property as the shadow the substance, whatever the contracting parties might stipulate to the contrary, ... (and) in accordance with the provisions set forth in section 105 of the Mortgage Law, in connection with section 9 of that Law and article 63 of its Regulations, the registrar of property should carry over the charges that burden the whole of the principal property and assign them as liens that should burden the properties segregated from the principal property, whatever they may be; ... If we look closely into the matter and consider that in said sixth clause ... there is a novation of contract imposed by the parties without the consent of the said creditor (subdivision 2, section 1171 of said code), then application should be made of section 1173 of that code, which prohibits a novation without the consent of the creditor, and said novation is void because the original obligation from which it proceeds is also void; and as that novation also forms part of the consideration of the contract, there is no consideration, and therefore said contract has no legal existence or effectiveness justifying its record in the registry ... By way of illustration, and as it treats of a case similar to the one under discussion, I wish to cite a decision men-

tioned by Odriozola in his work on Jurisprudence, page 640, to this effect: 'Where in a deed the rent charge (*censo*) originally imposed on the whole of a property is redeemed as to a part thereof, section 1203 of the Civil Code (sec. 1171 of our Code) undoubtedly applies, since a principal condition of the obligation, namely, that the rent charge should burden the whole property, is modified, and a real novation, which, as such, must be effected with the consent of all the interested parties, is produced (Decision of November 10, 1906)'..."

In our opinion, the ruling of the registrar is not without foundation. The way in which the said official defends it shows careful study. Really, the case is not a simple one; but, taking as a basis the principle of the liberty to contract, and, as the record can be made by setting forth with all clearness the fact that the mortgage creditor did not intervene in the contract, and carrying the lien over to the segregated property, we are inclined to conclude that the record is proper.

The registrar himself admits that if the mortgage creditor had intervened in the agreement and had given its consent, the contract would be perfect. Said creditor did not intervene and cannot be at all prejudiced, its rights must be protected; but this does not mean that the grantee of the person who purchased the mortgaged property at an execution sale cannot amicably settle his differences with the original owner by acknowledging her right to a homestead free from the mortgage lien, as far as he can do so. If the Martínez-Valle spouses discharge the obligation assumed by them and pay the mortgage, the contract will have been fully performed.

It cannot be maintained that Mrs. Sepúlveda was deceived. She is presumed to know the law and should be aware of the fact that the lien burdening the whole property cannot be canceled on the portion left in her possession, without the consent of the creditor, before the debt is paid.

The acknowledgment of a homestead right by the Martínez-Valle spouses does not necessarily bind the bank, but the fact that this is so should not interfere with the agreement

entered into between the present owner of the mortgaged property and the former owner, in regard to the right of the latter to occupy a part of the property. As regards those two persons at least, the agreement is valid, and since it involves real property, it is recordable in the registry.

Therefore, the decision appealed from must be reversed and the record sought must be ordered with the curable defect indicated.

Mr. Justice Aldrey and Mr. Justice Córdova Dávila dissented.